REISSUED FOR PUBLICATION

AUG 25 2017

OSM

U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: July 31, 2017

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| CONNOR TOES, | * | No. 16-819V |
| | * | |
| Petitioner, | * | Special Master Sanders |
| | * | |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | Interim Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | * | Reasonable Basis. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioner.
Christine M. Becer, United States Department of Justice, Washington, DC, for Respondent.

## DECISION GRANTING INTERIM ATTORNEYS' FEES AND COSTS[1]

On July 11, 2016, Connor Toes ("Petitioner") filed a petition for compensation under the National Vaccine Injury Program, 42 U.S.C. § 300aa-10 to -34[2] (the "Vaccine Act" or "Program"). Pet., ECF No. 1. Petitioner alleged that he developed "stomach pains, chronic fatigue, headaches and weight loss due to a severe adverse reaction he suffered after receiving the Gardasil, varicella and Menactra vaccinations on July 11, 2013 [and July 18, 2013]." Pet. 1-2.

On April 24, 2017, Petitioner's counsel moved to withdraw from the claim. Mot. Withdraw, ECF No. 28. On the same day, Petitioner moved for an award of interim attorneys' fees and costs. Mot. Att'ys' Fees, ECF No. 27. Respondent replied to Petitioner's fees motion on May 11, 2017, and argued that "any award of fees and costs is inappropriate in this case because the petition lacked a reasonable basis, as required by 42 U.S.C. § 300aa-15(e)(1)(B)."

---

[1] This decision shall be posted on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Resp. 1, ECF No. 30. Petitioner filed a reply and argued that "evidence indicates that the claim was feasible" because Petitioner experienced diminished health after vaccination. Reply 6, ECF No. 32.

After careful consideration, the undersigned has determined that at the time of filing, there was a reasonable basis for the Petitioner's claim that weakened as the case developed and additional evidence became available. For the reasons set forth below, Petitioner's motion for interim fees and costs is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Medical Records

Petitioner had just turned 16 years-old when his pediatrician, Dr. Fred Barash, administered varicella, Gardasil, and Menactra vaccines in July of 2013. Pet'r's Ex. 2 at 2, ECF No. 7-2; Pet'r's Ex. 4 at 3, ECF No. 7-4; Pet'r's Ex. 12 at 1, ECF No. 11-1. Records from Dr. Barash's office[3] detail Petitioner's medical history, which included prescriptions of Epiduo and Focalin[4] for acne and attention deficit disorder, respectively. Pet'r's Ex. 3 at 3, ECF No. 7-3. Petitioner remained on Focalin following his vaccinations, and there is no evidence Petitioner visited a medical professional for any vaccine-related complaints or injuries during the remaining weeks of July or the entirety of August. *See generally* Pet'r's Ex. 3; Pet'r's Ex. 4. Dr. Barash's records from August of 2013 include a notation indicating that Petitioner's prescription for Epiduo was renewed. Pet'r's Ex. 3 at 4.

Petitioner also filed medical records from Avon Old Farms School Health Centers that began with the school year in September of 2013. Pet'r's Ex. 4. Petitioner's Physical Exam for New Students revealed normal system findings and listed cat and pollen allergies, a history of asthma, and a prescription for Focalin. *Id.* at 1. The School Health Center records also included dispensary notes that documented Petitioner's regular visits beginning in September of 2013 and continuing through May of 2014. *See generally id.* On September 28, 2013, Petitioner was treated for sinus pressure and headaches. *Id.* at 4. Petitioner took ibuprofen for his pain and reported congestion and vomiting. *Id.* Petitioner also complained of headaches in November and December of 2013, and January and February of 2014. *Id.* at 6.

Prior to his vaccinations in 2013, Petitioner had been seeking treatment for face and back acne and other skin problems with Sadick Dermatology. Pet'r's Ex. 10, ECF No. 7-10. Available medical records from Sadick begin in 2012 and continue through 2015. *Id.* Petitioner went to Sadick Dermatology on January 4, 2014 for acne treatment. *Id.* at 7. Although Petitioner complained of headache to Dr. Barash during examinations in December of

---

[3] The records filed by Petitioner from Dr. Barash's office were the physician's hand-written notes, which were sometimes difficult to read.

[4] Focalin XR is a Central Nervous System (CNS) stimulant indicated for the treatment of Attention Deficit Hyperactivity Disorder (ADHD) in patients aged 6 years and older. *Physicians' Desk Reference* ("PDR") 2239 (66th ed. 2012).

2013 and January of 2014, he denied headaches to medical professionals at Sadick. Pet'r's Ex. 4 at 5; Pet'r's Ex. 10 at 7.

When Petitioner experienced congestion and a prolonged headache that lasted two days, he returned to his pediatrician on March 1, 2014. Pet'r's Ex. 3 at 5. Dr. Barash renewed Petitioner's prescription for Focalin. *Id.* On September 12, 2014, Petitioner saw Dr. Barash with complaints of photophobia, diarrhea, nausea, and headache. *Id.* Dr. Barash diagnosed Petitioner with migraines. *Id.* On October 7, 2014, Petitioner again sought treatment from Dr. Barash for severe migraines. *Id.* Dr. Barash noted "[the] need to discontinue Focalin in face of severe migraines," but renewed the prescription. *Id.* Petitioner's Focalin prescription was renewed again by Dr. Barash on March 6, 2015. *Id.* Petitioner denied experiencing headaches at that time. *Id.* Dr. Barash diagnosed Petitioner with otitis[5] on March 26, 2015 and prescribed Petitioner Augmentin. *Id.* Petitioner's otitis persisted, and Dr. Barash renewed his prescription on May 11, 2015. *Id.* Petitioner sought treatment the following day from ear, nose, and throat physician, Dr. Michael Ditkoff, for his continued otitis. Pet'r's Ex. 6, ECF No. 7-6. During Dr. Ditkoff's examination, Petitioner complained of nasal congestion, sore throat and other sinus issues, but again denied headaches or fatigue. *Id.* at 5. Petitioner also denied headaches during a visit to Sadick Dermatology on June 22, 2015, and in July on the 6th and the 20th. Pet'r's Ex. 10 at 9, 11, 13.

Petitioner returned to Dr. Barash with complaints of stomach and digestion issues on August 5, 2015. Pet'r's Ex. 3 at 5. Petitioner was referred to Dr. Anthony Celifarco of Gastrointestinal Associates on October 16, 2015 and described a "long standing history of intermittent abdominal pain . . . over the last 2 -3 years." Pet'r's Ex. 7 at 9, ECF No. 7-7. Petitioner also described occasional headaches. *Id.* at 11. Dr. Celifarco's records noted Petitioner's denial of diarrhea, vomiting, nausea, and dysphagia. *Id.* at 9. Dr. Celifarco's medical impression was that Petitioner suffered from "progressive weight loss and satiety without any other constitutional symptoms" and performed a gastroscopy. *Id.* at 10.

Petitioner saw Dr. Raphael Kellman of The Kellman Center for Integrative and Functional Medicine, on December 29, 2015, for "fatigue, chronic infections, and cystic acne." Pet'r's Ex. 5 at 3, ECF No. 7-5. Dr. Kellman ran several tests to measure inflammation markers and antibody levels for specific pathogens. *Id.* at 1. The results revealed elevated ammonia levels and elevated antibodies for mycoplasma, Parvovirus and Epstein-Barr Virus. *Id.* Dr. Kellman noted, "the symptoms began shortly after Petitioner received multiple vaccines in 2013." *Id.* It should be noted that a disclaimer, similar to the one that warns "results are to be used for research purposes or in attempt to understand . . . immune, infectious or inflammatory disorders," are repeated throughout the report. Pet'r's Ex. 5 at 16. Dr. Kellman ultimately

---

[5] Otitis is inflammation of the ear, often with pain, fever, hearing loss, tinnitus, and vertigo. *Dorland's Illustrated Medical Dictionary* 1338 (30th ed. 2003).

diagnosed Petitioner with hypothyroidism,[6] autonomic neuropathy,[7] and chronic fatigue on March 9, 2016.  *Id.* at 19.  Dr. Kellman stated, "[B]y lifestyle and diet modification [Petitioner's] symptoms have improved and recent blood work shows significant improvement in inflammation markers in lab work from May 10, 2016."  *Id.* at 1.

### B.  Claim Procedure and Motion to Withdraw

Petitioner filed his first set of medical records on August 3, 2016, approximately one month after he filed his petition. Pet'r's Exs. 1-11, ECF No. 7-8.  A Statement of Completion was filed by the Petitioner on August 4, 2016. ECF Nos. 9.  Respondent filed a status report on August 25, 2016, and requested additional information to confirm Petitioner's receipt of the vaccines at issue. Status Rep., ECF No. 10.  In response, Petitioner filed the receipts for the Menactra and Gardasil vaccines from Manhasset Park Drug Corporation on August 26, 2016. Pet'r's Ex. 12, ECF No. 11.  Petitioner filed his amended Statement of Completion on August 30, 2016. ECF No. 12.  Respondent subsequently filed his Rule 4(c) Report on October 11, 2016, and recommended the case be dismissed due to "insufficient evidence of vaccine causation."  Resp't's Report, ECF No. 15.  A Rule 5 status conference was held on October 27, 2016, and Special Master Hamilton-Fieldman discussed the potential causation issues with Petitioner's case. Rule 5 Order, ECF No. 16.  Special Master Hamilton-Fieldman gave Petitioner a deadline of December 29, 2016 to file an expert report and an amended petition.  *Id.*  On December 30, 2016, Petitioner filed his first motion to extend this deadline to January 30, 2017. Pet'r's Mot., ECF No. 17.  The case was reassigned to the undersigned who granted Petitioner's motion on January 9, 2017. ECF No. 19.

On January 30, 2017, Petitioner filed his second unopposed Motion for Extension of Time and requested until March 1, 2017 to submit an expert report and an amended Petition. Pet'r's Mot., ECF No. 20.  The undersigned granted Petitioner's motion and declared that further extensions will not be granted without good cause.  *Id.*  Despite this warning, Petitioner missed the March 1, 2017 filing deadline and was contacted by chambers.  Informal Comm., dated Mar. 2, 2017.  Petitioner consequently filed his amended petition on March 6, 2017. ECF No. 21.  Petitioner alleged in his amended petition that he suffered from autonomic dysfunction with symptoms to include stomach pains, chronic fatigue, headaches, and weight loss, as a result of the administration of multiple vaccines in July of 2011. Amend. Pet. 3, 7.  Petitioner did not however, file an expert report.  *See* Docket Rep.  As Petitioner failed to meet the filing deadline with respect to the amended petition and never submitted an expert report, the undersigned issued a Non-Compliance Order and required Petitioner to submit an expert report no later than March 27, 2017. ECF No. 22.

On March 13, 2017, Petitioner filed his third unopposed Motion for Extension of Time until, "April 28, 2017 to submit an expert report." Pet'r's Mot., ECF No. 24.  The undersigned granted the third motion and informed Petitioner that no further extensions would be granted.

---

[6] Hypothyroidism deficiency of thyroid activity, characterized by decrease in basal metabolic rate, fatigue, and lethargy.  *Dorland's Illustrated Medical Dictionary* 900 (30th ed. 2003).

[7] Autonomic Neuropathy is a functional disturbance or pathological change of the autonomic nervous system.  *Dorland's Illustrated Medical Dictionary* 1257 (30th ed. 2003).

Order, ECF No. 25. Four days before the expert report deadline, Petitioner filed his Motion for Interim Attorneys' Fees, and Petitioner's attorney filed a Motion to Withdraw. Mot. Att'ys' Fees; Mot. Withdraw. To prevent procedural and standing issues, the undersigned ordered on April 25, 2017, that "Mr. Downing's Motion to Withdraw as attorney will remain pending until after the interim fees decision is issued." Order, ECF No. 29.

### C. Motion for Attorneys' Fees and Costs

In his motion for interim attorneys' fees, Petitioner requested $15,820.50 in fees and $1,905.24 in costs, totaling $17,725.74. Mot. Att'ys' Fees 1. Petitioner's attorney, Mr. Downing, requested an hourly rate of $350 for his work performed in 2015 and 2016. *See generally* ECF No. 27-1. Mr. Downing increased his requested rate to $375 per hour for 2017. *Id.* Mr. Downing also moved for compensation for the work of one other attorney and two paralegals. Ms. Courtney Van Cott requested an hourly rate of $195 for her work performed in 2015 and 2016, and the paralegals, Mr. Robert Cain and Ms. Danielle Avery, both requested hourly rates of $100 for 2016 and $135 for 2017. *Id.*

Respondent filed his Response to Petitioner's Motion for Interim Attorney's Fees and Costs on May 11, 2017. Resp., ECF No. 30. Respondent requested "the Court deny Petitioner's application *in toto* because . . . the petition lacked a reasonable basis as required [under] 42 U.S.C. § 300aa-15(e) (1) (B)." *Id.* Respondent did not contest the good faith basis for Petitioner's filing. *Id.* However, Respondent did recommend compensation be denied for lack of a definitive diagnosis. *Id.* Respondent argued that, "months and years" had passed before Petitioner developed symptoms that are being attributed to his vaccination. *Id.* at 2. Respondent argued because, "[P]etitioner's medical records did not substantiate his claims, nor was he able to find an expert to opine on vaccine causation," Petitioner did not have a reasonable basis for his claim. *Id.* at 6.

Respondent argued that Mr. Downing failed to make basic inquiries prior to filing the petition. *Id*. at 4. Respondent claimed, "[D]espite an attorney's belief in the statements of his clients, he needs facts upon which to ground his own knowledge, information, or belief as to the merits of his client's claim under law." *Id*. at 5. Respondent asserted, "[P]rior to accepting a case, an attorney should be able to distinguish a case that has reasonable underpinnings from one that does not. Rather than waste the court's time and efforts, an attorney should use reasoned judgement in determining whether to accept or pursue a claim." *Id.*

Respondent argued further that even if the undersigned determines that there was a reasonable basis for Petitioner to file his claim, "an award for interim fees is not appropriate." *Id.* at 8. Respondent claimed that the Court of Appeals for the Federal Circuit in *Avera* provided a narrow set of circumstances in which an award of interim fees would be appropriate: "protracted proceedings, where 'costly experts must be retained, or where the petitioner had suffered undue hardship." *Id.* at 9 (citing *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008)). Respondent posited that none of these circumstances exist in this case. *Id.* Respondent further argued that Mr. Downing's request is "too high," and asked the undersigned to "exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 9-10.

5

In Petitioner's reply filed on May 18, 2017, Petitioner asserted that his petition was filed with good faith and objected to Respondent's conclusion that the claim lacked a reasonable basis. Reply at 5, ECF No. 32. Although Respondent did not argue that Petitioner's filing lacked good faith, Petitioner asserted that his petition was filed in good faith and referred to his "under-oath" affidavit. *Id.* Petitioner stated that his symptoms were consistent with a vaccine-induced condition, and that the claim was filed with the belief that Petitioner suffered a vaccine-related injury. *Id.*

Petitioner responded to Respondent's reasonable basis argument by reiterating that, "the reasonable basis requirement is objective . . . and factors to be considered are the factual basis, medical support, jurisdictional issues, and circumstances under which the petition is filed." *Id.* at 6. Petitioner referenced the medical records obtained from Dr. Barash and noted his symptoms (i.e., wheezing, coughing, and congestion) that are consistent with a vaccine-induced reaction. *Id.* at 8. Petitioner also quoted Dr. Kellman's observation that Petitioner "had autonomic neuropathy and symptoms began after having the vaccines at issue." *Id.* at 9. Petitioner further asserted, "Dr. Kellman . . . links Mr. Toes's symptoms to the vaccinations at issue." *Id.* Finally, Petitioner's Reply cited autonomic testing results and articles that would support a reasonable basis for the petition. *Id.* at 9-14. Petitioner argued that "both branches of the autonomic nervous system display signs of impairment, which account for Mr. Toes' symptomology . . . . [F]urthermore, autonomic dysfunction can have an insidious onset that occurs weeks or months post-vaccination." *Id.* at 11.

Petitioner contested Respondent's claims that interim fees were inappropriate and that the fee request was "too high." *Id.* at 1, 12. Petitioner first argued that the fees and costs incurred in this case created an "undue hardship" for Petitioner and Mr. Downing sufficient for an award of interim fees. *Id.* at 2-4. Petitioner's Reply explains that Mr. Downing must withdraw from the case, and Petitioner is "searching for alternative Counsel." *Id.* at 3. Mr. Downing's withdrawal, combined with his firm's practice of Mr. Downing personally advancing case expenses, creates an undue burden for Mr. Downing. *Id.* (citing *Edmonds v. Sec'y of Health & Human Servs.*, 04-87V, 2012 WL 1229149, at \*9 (Fed. Cl. Spec. Mstr. Mar. 13, 2009) ("It is clearly incorrect to suggest that it is not an undue hardship for a small firm to loan thousands of dollars for years.")). Petitioner added that the factors enumerated in *Avera* are not exhaustive, and special masters have "broad discretion" in awarding interim attorneys' fees. *Id.* at 5 (quoting *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at \*9 (Fed. Cl. Spec. Mstr. Sept. 30, 2015)).

Petitioner then argued that his requested total amount is appropriate and should be granted in full. *Id.* at 13-14. Petitioner's Reply suggested that Mr. Downing "would have been willing to address any specific concerns Respondent had" regarding Mr. Downing's fee request; however, "Respondent failed to devote a single sentence to support" his argument that Mr. Downing's request was inflated. *Id.* at 13. Petitioner argued that Respondent's position was therefore "specious and should receive no consideration." *Id.* at 13. Mr. Downing requested the total amount of $17,725.74 for attorneys' fees and costs, plus "the additional fees in having to respond to Respondent's objection." *Id.* Mr. Downing filed no billing records for this additional amount. *See* Docket Rep.

This matter is now ripe for a decision.

## II.    STANDARDS FOR ADJUDICATION

### A. Reasonable Basis

The Vaccine Act permits an award of reasonable attorneys' fees and costs if "the petition was brought in good faith and there was reasonable basis for which the petition was bought." § 15(e)(1); *Sebelius v. Cloer,* 133 S. Ct. 1886, 1893 (2013). Petitioners are presumed to have acted in good faith in the absence of bad faith evidence. *See Grice v. Sec'y of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996).

There is no presumption of a petition's reasonable basis, however. *McKellar v. Sec'y of Health & Human Servs.,* 101 Fed. Cl. 297, 304 (2011). Reasonable basis is typically viewed as "an objective standard determined by the 'totality of the circumstances.'" *Chuisano v. United States,* 116 Fed. Cl. 276. 286 (2014) (citations omitted). This somewhat amorphous standard has often been defined not by what is included in the record, but rather by what is lacking in cases where reasonable basis has been found not to exist. The statute's use of the phrase "reasonable basis for which the petition was brought" is consistent with other portions of the statute that require the petition to be filed with evidence. *See Chuisano v. Sec'y of Health & Human Servs.,* No. 07-452V, 2013 WL 6234660, at \*8-10 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), *mot. for rev. denied*, 116 Fed. Cl. 276 (2014). Evidence that is relevant to this inquiry may include medical records, affidavits from percipient witnesses, and opinions from retained experts. *See* 42 U.S.C. § 300aa-11(c). In considering the totality of circumstances, factors to be examined are "'the factual basis, the medical support, and jurisdictional issues,' and the circumstances under which a petition is filed." *Chuisano*, 116 Fed. Cl. at 288. "[T]he burden is on the petitioner to affirmatively demonstrate a reasonable basis." *McKellar,* 101 Fed. Cl. at 305; *see also Moran v. Sec'y of Health & Human Servs.,* No. 07-363V, 2008 WL 8627380, at \*5 (Fed. Cl. Spec. Mstr. Dec. 12, 2008) (petitioner "bears the burden of showing he is entitled" to attorneys' fees and costs).

Typically, reasonable basis is not found when "fundamental inquiries are not made." *Di Roma v. Sec'y of Health & Human Servs.,* 90-377, 1993 WL 496981 at \*2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Additionally, a case may have reasonable basis when filed, but may lose reasonable basis during the pendency of the case. *Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994); *McNett v. Sec'y of Health & Human Servs.,* No. 99-684V, 2011 WL 760314, at \*6. (Fed. Cl. Spec. Mstr. Feb. 4, 2011). The nature and extent of counsel's investigation into the claim's grounds, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.,* No. 09-176, 2014 WL 1604002, at \*6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma*, 1993 WL 496981 at \*2 (citing *Lamb v. Sec'y Health & Human Servs.,* 24 Cl. Ct. 255, 258-59 (1991)).

## B. Interim Fees Award

In *Avera*, the Federal Circuit stated that a special master may award fees on an interim basis, and that such awards "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352. In *Shaw*, the Federal Circuit held that "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010). An appropriate circumstance in which to award interim fees can occur when petitioner's counsel withdraws from a case. *Faup v. Sec'y of Health & Human Servs.*, No. 12-87V, 2017 WL 2257429, at \*5 (Fed. Cl. Spec. Mstr. Apr. 21, 2017) (citing *Davis v. Sec'y of Health & Human Servs.*, No. 15-2777V, 2016 WL 3999784, at \*3 (Fed. Cl. Spec. Mstr. July 5, 2016)).

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1348. This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the numbers of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008).

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at \*19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). In *McCulloch*, Special Master Gowen held that an attorney with twenty or more years of experience has a reasonable hourly rate between \$350 and \$425. *Id.* The Court recently updated the *McCulloch* rates for 2017.[8]  For attorneys with twenty to thirty years of experience, the reasonable hourly fee range for work performed in 2017 is \$358 to \$424. The revised rate schedule also contains increased rates for attorneys with more than thirty-one years of experience.

---

[8] The 2017 Fee Schedule can be accessed at:

http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf. The hourly rates contained in the 2017 Fee Schedule are updated from the decision *McCulloch v. Secretary of Health and Human Services*. 2015 WL 5634323 at \*19.

## III.   DISCUSSION

In the absence of evidence that Petitioner acted in bad faith, Petitioner is entitled to a presumption of good faith. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). It is undisputed by Respondent that Petitioner acted in "good faith." Therefore, the "good faith" requirement is satisfied.

### A.  Reasonable Basis

After a careful review of the case record, I conclude that this matter had sufficient reasonable basis at the time the original petition was filed. Petitioner was vaccinated by Dr. Fred S. Barash on July 11, 2013 with a varicella vaccine and on July 18, 2013 with Gardasil and Menactra vaccines. Pet'r's Ex. 2 at 2. Approximately eight weeks after the vaccinations, Petitioner's medical records reflect a continuing complaint of headaches and stomach concerns throughout a period of approximately 3 years. Pet'r's Ex. 3. Although Petitioner's physician, Dr. Barash, did not attribute any of Petitioner's general symptoms to the vaccinations, he did not discontinue the medication that he suggested may be the cause of Petitioner's symptoms. *See* Pet'r's Ex. 3 at 5. It is therefore plausible that he believed the symptoms may have been attributed to some other cause. Additionally, primary care physicians are often not the individual who correctly identifies a patient's injury as an adverse vaccine reaction. In this case, Petitioner was referred to various specialists for his skin, stomach, and sinus conditions.

Petitioner argued that a temporal association shows a reasonable basis in this case, and Petitioner quoted Dr. Kellman's note that Petitioner "has autonomic neuropathy and symptoms began after receiving the vaccines at issue." Pet'r's Ex. 5 at 1. Petitioner further asserts, "Dr. Kellman . . . links Mr. Toes's symptoms to the vaccinations at issue." Reply 9. Finally, Petitioner's reply cited autonomic testing results and research articles that suggest Petitioner has autonomic dysfunction connected to Gardasil vaccination. *Id.* at 11. Petitioner's symptoms were chronic and he did seek testing for autoimmune abnormalities consistent with an adverse vaccine reaction. While this evidence may be sufficient to establish reasonable basis temporal association is not sufficient to establish causation-in-fact. *Grant v Sec'y of Health & Human Servs.,* 956 F.2d 1144, 1148 (Fed. Cir. 1992). Dr. Kellman did not provide a medical or scientific theory that would suggest Petitioner suffered from adverse effects of vaccination. Petitioner failed to provide an expert report, a medical record, or a medical opinion that presented a theory that the vaccinations were the cause of an adverse effect. This is notwithstanding Petitioner's multiple requests for extensions of time to amend the facts alleged in the petition, obtain an expert, and provide a causation theory. Petitioner missed the extended deadline to file an amended petition with a clearly described injury and diagnosis, and failed to provide evidence of a vaccine-induced injury to sustain his claim. Petitioner bears the burden of showing he is entitled to attorneys' fees and costs by establishing a reasonable basis for his petition. Petitioner's medical record does not link his condition to any vaccine, and it is inconsistent regarding the chronic nature of Petitioner's symptoms.

Although I do find that there was sufficient reasonable basis for the case to be filed initially, an examination of the complete medical record, coupled with Petitioner's inability to procure a medical expert has seriously called into question a reasonable basis to continue with

this claim. This concern is further exacerbated by Petitioner's third request for an extension of time to file an expert report that ultimately resulted in a motion for withdrawal by Petitioner's counsel. Although Vaccine Program petitioners may file a claim based on limited information, there is an expectation that Petition and counsel "act responsibly" in continuing to evaluate the viability of a claim as more information becomes available. This is particularly important in a case such as this, where Respondent identified causation issues that were echoed by the presiding Special Master, fairly early in the process.

## B. Interim Fees

### a. Reasonable Hourly Rate

For the reasons stated above, Petitioner has established a reasonable basis for filing his claim sufficient to support Mr. Downing's motion for interim fees. In addition to a reasonable basis, Petitioner must also establish a good faith basis for the claim and an undue hardship endured by Petitioner and his counsel. *Shaw*, 609 F.3d. at 1375. A good faith basis exists for this claim, and Mr. Downing's billing records show sizable time and costs were expended in the litigation of this case and borne by Mr. Downing personally. *See* ECF No. 27-1. Although this case is neither protracted, nor involves expert report, the undersigned finds that Mr. Downing is entitled to interim attorneys' fees and costs.

Following the lodestar approach in *Avera*, the first step involves determining an estimate by calculating "the numbers of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347-48 (quotation omitted). Mr. Downing's requested rates have recently been found reasonable. *Bales v. Sec'y of Health & Human Servs.*, No. 15-882V, 2017 WL 2243094, at *3-4 (Fed. Cl. Spec. Mstr. Apr. 26, 2017); *see also Brannigan v. Sec'y of Health & Human Servs.*, No. 14-675V, 2017 WL 2644696, at *4 (Fed. Cl. Spec. Mstr. May 26, 2017) (adopting *Bales*). Mr. Downing's requested rates are within the Court's Attorneys' Forum Hourly Fee Rate Schedule,[9] and the undersigned finds them reasonable.

Mr. Downing failed to provide the undersigned with any information related to his co-workers other than their initials. *See* ECF No. 27-1. Fortunately for Mr. Downing, Special Master Gowen articulated the experience levels and full names of Mr. Downing's peers in *Bales*. No. 15-882, 2017 WL 2243094, at *3-4 (Fed. Cl. Spec. Mstr. Apr. 26, 2017). The undersigned agrees with Special Master Gowen's analysis, and therefore finds that the rates requested for Ms. Van Cott, Ms. Avery, and Mr. Cain are also reasonable. *See id.* The undersigned would caution Mr. Downing in the future against failing to include this background information when requesting fees. The lack of this information could result in delayed processing times and the reduction of fee awards.

### b. Hours Expended

The second step in *Avera* is for the Court to make an upward or downward modification based upon specific findings. 515 F.3d at 1348. In a review of Mr. Downing's billing records,

---

[9] *See supra* note 8.

the undersigned found no unnecessary billing requests. His fee request will therefore be awarded in full.

### c. Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992). Mr. Downing's costs request consists of charges related to the collection of medical records and consultations with possible experts. *See* ECF 27-1 at 21-24. A review shows these records to be reasonable, and the undersigned awards Mr. Downing's costs in full.

## IV.   CONCLUSION

Petitioners in Vaccine Act litigation must show that their petition was filed in good faith and on a reasonable basis in order to be eligible for attorneys' fees and costs. Petitioner in the present case established a reasonable basis for his petition at this time of the initial filing. Petitioner's Motion for Attorneys' Fees is therefore **GRANTED**. It is not clear that Petitioner will be able to continue to argue the reasonableness of this claim moving forward.

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2012), the undersigned awards Mr. Downing $15,820.50 for fees and $1,905.24 for costs. Accordingly, the undersigned awards **the total of $17,725.74 to be issued in the form of a check payable jointly to Petitioner and Petitioner's counsel, Andrew D. Downing, of Van Cott & Talamante, PLLC, for interim attorneys' fees and costs.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above decision.[10]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[10] Pursuant to Vaccine rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.